Star Planing Mill Co. *v.* Exchange Bank of Kentucky.

**Indorsement of Note Discounted.**

When a note is handed over to a bank cashier for a valuable consideration the indorsement is a mere form, the transfer for consideration is the substance; it creates an equitable right and entitles the party to call for the form, and under proper issues in a case the transferrer of the bill may be compelled by bill in equity to indorse.

**Mistake in Failing to Indorse Note.**

Where a person is in the habit of discounting his corporation's notes at a bank and takes a note to the bank for such purpose, but by mistake and oversight fails to indorse the note, which he discounts, the mistake may be corrected in a suit on the note and the corporation held liable as an indorser.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

October 20, 1881.

Opinion by Judge Hargis:

On the 9th of April, 1877, A. W. Richardson executed his promissory note for the sum of $215.34, payable to the appellant 90 days after date, at the Exchange Bank of Kentucky. The note was negotiable. The bank is chartered and authorized to discount bills and notes, and had been in the habit of doing so for the appellant when it discounted the note named above.

At the time the note was delivered to the bank by the appellant's agent and secretary, by neglect, as the evidence shows, of both the agent and cashier the name of the appellant company was not indorsed on the back of the note as had been done in other instances when discounting paper with the appellee. The latter brought suit, alleging that the appellant discounted the note to it, and by mistake failed to indorse it, but received the sum of $212.94 therefor. The appellant denied the mistake and its liability as indorser and pleaded that it sold and assigned the note to the appellee, who had not prosecuted the maker to insolvency by obtaining judgment and return of no property found against him.

Issue was joined by reply upon the facts alleged in the answer. The only question involved in this case is, Did the appellant discount or assign the note? This is purely a question of fact,

but it arises upon an exclusively equitable issue, and, therefore, the judgment of the court can not be treated as the verdict of a properly instructed jury, but it must stand or fall by the fair deductions to be drawn from the evidence.

The only evidence on which the appellant company relies to sustain its defense is the following meager statement of the agent who discounted the note to the appellee: "I just went and asked him what he would charge to give me the money on the note sued on, and he said $1.40, and I said all right, and he gave me credit on the pass book. This is all that was said and all that was done." Take this statement, and under the test of ordinary attention in its examination it will not support the appellant's plea, which seems to have been based upon the theory and uncommunicated belief of its agent.

When a business man proposes to sell and assign a note saving to himself all the legal protection belonging to an ordinary assignor for value, he does not generally ask the purchaser what he will charge to give him the money on the note, but asks the purchaser what he will give for the note. The term "charge" is very naturally used in connection with discount, and bankers generally charge so much discount on indorsed bills and notes. If the agent meant to sell and assign the note why did he not enter the assignment on the note? His unexpressed and noncommunicated understanding would then have rested in an abiding form. The transaction, as this witness describes it, strikes our mind as one of the kind which the appellant had before had with the appellee in regard to similar paper.

But aside from this view of the evidence, the cashier testifies that he discounted the note in the usual way and so accepted it, and the omission to have the indorsement of appellant's name on the note was the result of mistake. It is also proven that the maker of the note was a nonresident of the county where both of these litigants reside, and insolvent at the time the note was discounted to the appellee bank, and that the appellant company was furnishing the maker with considerable quantities of lumber, and therefore interested in sustaining his credit, rather than placing him in the attitude of being sued the first term after the note should become due, unless he paid it, whether it was convenient for him to do so or not.

It appears that the cashier was wholly unacquainted with the financial condition of the maker, and it is unreasonable to suppose that he would buy a note on a stranger in the capacity of assignee when he was the representative of a bank of discount and exchange, whose interest is to avoid the purchase of notes as assignee for the same or a lower rate than its authorized and obtainable discounts, when such notes can as easily be discounted and a known and solvent indorser secured.

The length of time the appellee bank held the note before suing to rectify the mistake is a circumstance against its claim, but it was equally as strong an inducement to the appellant to attempt escape from liability as indorser, as the lapse of time favored the theory of its alleged understanding.

The witnesses seem to have testified fairly on both sides, but what they have said is not necessarily in conflict, as neither the agent of the appellant company nor the cashier of the appellee bank disclosed to the other, in words, whether the appellant company was indorser or assignor; but the circumstances touched above, and the fact that both parties agree that the appellant's name should have been written on the paper, but differ as to the intent and purpose thereof, are consistent with the usual course of trading adopted by the parties and sustain with singular certainty the judgment rendered below.

The authorities are full and uniform in sustaining the rule as vigorously expressed by the *Master of the Rolls,* 2 Jac. & Walk. 243, where it is said, in treating the question whether a difference existed between an indorsement by the party and an indorsement by his representative, that "when a note is handed over for valuable consideration, the indorsement is a mere form; the transfer for consideration is the substance; it creates an equitable right, and entitles the party to call for the form."

This doctrine is broadly laid down in 1 Story's Eq. Jur. (11 ed.), §§ 99, 729, where the general principle stated in 1 Daniel on Neg. Inst. (6th ed.), § 744, may be found. The last authority says, in a state of case like the one before us, that the transferrer of the bill may be compelled by bill in equity to indorse. This is the effect of the judgment, and it is therefore *affirmed.*

*Tyler & Hazelrigg, for appellant.*
*Reid & Stone, for appellee.*